## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| PYRAMID CONSULTING, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO. |
| v. | ) | 1:21-CV-04752-TWT |
| | ) | |
| CAMERON FAULKNER, | ) | |
| JOHN MARKLEY, and | ) | |
| HOMELAND LLC, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

NOW COMES Pyramid Consulting, Inc. ("Pyramid") and files this Complaint for Injunctive Relief and Damages against Defendants Cameron Faulkner ("Faulkner"), John Markley ("Markley"), and Homeland LLC ("Homeland").

## PARTIES, JURISDICTION, AND VENUE

1.

Pyramid is a Georgia corporation with its principal place of business located at 3060 Kimball Bridge Rd., Suite 200, Alpharetta, GA 30022.

2.

Faulkner is an individual residing at 2712 16th Avenue, Haleyville, Alabama 35565, and upon information and belief is a citizen of Alabama. Faulkner may be

served by delivering a copy of the Summons and Complaint to him at 2712 16th Avenue, Haleyville, Alabama 35565.

3.

Markley is an individual residing at 940 Gale Lane, Apartment 113, Nashville, Tennessee 37204, and upon information and belief is a citizen of Tennessee. Markley may be served by delivering a copy of the Summons and Complaint to him at 940 Gale Lane, Apartment 113, Nashville, Tennessee 37204.

4.

Homeland is a Tennessee limited liability company with its principal place of business located at 2550 Meridian Blvd., Suite 180, Franklin, TN 37067. Homeland's website states that it employs individuals in Kennesaw, Georgia. Homeland may be served by registered or certified mail or statutory overnight delivery, return receipt requested, addressed to it at its principal office.

5.

No member of Homeland is a citizen of Georgia.

6.

The amount in controversy between the parties exceeds $75,000 exclusive of interest and costs.

7.

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332.

8.

Faulkner consented to the personal jurisdiction of this Court in Section 26 of an Employment Agreement between Pyramid and Faulkner dated February 8, 2018 (the "Faulkner Agreement"). A true and accurate copy of the Faulkner Agreement is attached as Exhibit 1.

9.

Markley consented to the personal jurisdiction of this Court for injunctive relief in Sections 26 and 27 of an Employment Agreement between Pyramid and Markley dated February 7, 2020 (the "Markley Agreement"). A true and accurate copy of the Markley Agreement is attached as Exhibit 2.

10.

At all times relevant to this action, Homeland regularly and continuously transacted business in the State of Georgia, employed individuals in the State of Georgia, and had sufficient contacts in the Northern District of Georgia to subject it to personal jurisdiction in this district.

11.

Venue is proper in this Court pursuant to the forum selected in the Faulkner Agreement and the Markley Agreement and pursuant to 28 U.S.C. § 1391 because Homeland is subject to personal jurisdiction in this judicial district.

## FACTUAL BACKGROUND

**A.    Pyramid**

12.

Pyramid is engaged in the business of providing information technology related solutions services as well as recruiting information technology consultants for the purpose of placing such information technology consultants with companies or entities.

13.

Homecare Software Solutions LLC ("HHA") is one of Pyramid's clients.

**B.    Homeland**

14.

Homeland is a direct competitor of Pyramid. Homeland is engaged in the business of providing information technology related solutions services as well as recruiting information technology consultants for the purpose of placing such information technology consultants with companies or entities.

**C.**   **Faulkner and Markley Enter into Employment Agreements with Pyramid**

15.

On February 8, 2018, Faulkner executed the Faulkner Agreement with Pyramid as part of the terms and conditions of his employment. (Ex. 1). In the Faulkner Agreement, Faulkner's address is listed as 3303 Jefferson Circle South, Chamblee, Georgia, 30341. (*Id.*)

16.

On February 7, 2020, Markley executed the Markley Agreement with Pyramid as part of the terms and conditions of his employment. (Ex. 2).

17.

The Faulkner Agreement and the Markley Agreement (collectively, the "Employment Agreements") contain several post-employment restrictions (the "Restrictive Covenants"). (Ex. 1 and 2).

18.

Section 7 of the Employment Agreements contains a Trade Secrets and Confidential Information restriction (the "Non-Disclosure Covenant"). (Ex. 1 and 2 at § 7.)

19.

The Non-Disclosure Covenant prohibits Faulkner and Markley from, *inter alia,* misappropriating or disclosing Pyramid's Confidential Information or retaining Pyramid's Confidential Information upon their resignation or termination. (*Id*.)

20.

Faulkner's and Markley's obligations under the Non-Disclosure Covenant remain in effect as long as the information constitutes Confidential Information. (*Id*.)

21.

The Employment Agreements define the term "Confidential Information" as:

> . . . (a) information of the Company, to the extent not considered a Trade Secret under applicable law, that (i) relates to the business of the Company, (ii) possesses an element of value to the Company, (iii) is not generally known to the Company's competitors, and (iv) would damage the Company if disclosed, and (b) information of any third party provided to the Company which the Company is obligated to treat as confidential (such third party to be referred to as the "Third Party"), including, but not limited to, information provided to the Company by its licensors, suppliers or Customers. Confidential Information includes, but is not limited to, (i) future business plans, (ii) the composition, description, schematic or design of products, future products or equipment of the Company or any Third Party, (iii) communication systems, audio systems, system designs and related documentation, (iv) advertising or marketing plans, (v) information regarding independent contractors, employees, licensors, suppliers, Customers, or any Third Party, including, but not limited to, Customer lists compiled by the Company, and Customer information compiled by the Company, and (vi) information concerning the Company's or the Third Parties'

6

financial structure and methods and procedures of operation. Confidential information shall not include any information that (i) is or becomes generally available to the public other than as a result of an unauthorized disclosure, (ii) has been independently developed and disclosed by others without violating this Agreement or the legal rights of any party, or (iii) otherwise enters the public domain through lawful means.

(*Id*., at Exhibit A, ¶ D).

22.

Specifically, the Non-Disclosure Covenant states:

7.     <u>Trade Secrets and Confidential Information:</u>

(a)    You represent and warrant that:

(i)    You are not subject to any legal or contractual duty or agreement that would prevent or prohibit You from performing Your duties for the Company or complying with this Agreement, and

(ii)   You are not in breach of any legal or contractual duty or agreement, including any agreement concerning trade secrets or confidential information owned by any other party.

(iii)  During your employment, You will continue to honor any contractual/legal obligations You have to any former employers, and You will indemnify the Company for any breach of same.

(b)    You will not:

(i)    Use or disclose the Trade Secrets or the Confidential Information for any purpose other than

7

the Company's Business, except as authorized in writing by the Company;

(ii) During your employment with the Company, use or disclose (a) any confidential information or trade secrets of any former employer or third party, or (b) any works of authorship developed in whole or in part by you during any former employment or for any other party, unless authorized in writing by the former employer or third party; or

(iii) Upon your resignation or termination, (a) retain Trade Secrets or Confidential Information, including any copies existing in any form (including electronic form) which are in your possession or control, or (b) destroy, delete, or alter the Trade Secrets or Confidential Information without the Company's written consent.

(c) Your obligations to maintain the confidentiality of Trade Secrets and Confidential Information shall remain in effect as long as the information constitutes a Trade Secret or Confidential Information under the definitions set forth in this Agreement and/or applicable law.

(d) The confidentiality, property, and proprietary rights protections available in this Agreement are in addition to, and not exclusive of, any and all other rights to which the Company is entitled under federal and state law, including, but not limited to, rights provided under copyright laws, trade secret and confidential information laws, and laws concerning fiduciary duties.

(e) By signing below, You confirm that You understand that nothing in this Agreement prohibits You from reporting to any governmental authority information concerning possible violations of law or regulation and that You may disclose trade secret information to a government official

or to an attorney and use it in certain court proceedings
without fear of prosecution or liability provided You do so
consistent with 18 U.S.C. 1833.

(*Id*. at § 7.)

23.

Section 8 of the Employment Agreements includes a Non-Competition
restriction (the "Non-Competition Covenant"). (*Id*. at § 8.)

24.

The Non-Competition Covenant prohibits Faulkner and Markley from
performing Competitive Tasks in the Restricted Territory during the Restricted
Period. (*Id*.)

25.

The Employment Agreements define the term "Competitive Tasks" as "the
same or similar tasks that you performed on behalf of the Company during your
[last] twenty four (24) months of employment."  (*Id*., at Exhibit A, ¶ C.)

26.

The Employment Agreements define the term "Restricted Territory" as "the
area for which you had assigned responsibility during the last twenty four (24)
months of your employment with the Company." (*Id*., at Exhibit A, ¶ L.)

27.

The Employment Agreements define the term "Restricted Period" as "the time period during your employment with the Company, and for twenty four (24) months after your employment with the Company ends."  (*Id*., at Exhibit A, ¶ K.)

28.

Specifically, the Non-Competition Covenant states:

> 8. <u>Non-Competition:</u> During the Restricted Period, you will not, except as authorized by the Company, perform Competitive Tasks in the Restricted Territory. This provision shall be limited to performing such tasks on behalf of any entity in competition with the Company.

(*Id*. at § 8.)

29.

Section 9 of the Employment Agreements includes a Non-Solicitation of Customers restriction (the "Non-Solicitation Covenant"). (*Id*. at § 9.)

30.

The Non-Solicitation Covenant prohibits Faulkner and Markley from soliciting certain Pyramid customers for the purpose of providing any goods or services competitive with Pyramid's Business during the Restricted Period. (*Id*.)

31.

The Non-Solicitation Covenant prohibits Faulkner and Markley from soliciting any person or entity to whom Pyramid has either (i) sold its products or services or (ii) directly solicited to sell its products or services. (*Id.*, at Exhibit A, ¶ G.)

32.

The Non-Solicitation Covenant applies only to the Customers with whom Faulkner and Markley had "Contact," which is defined as:

> any interaction that takes place in the last twenty four (24) months of your employment with the Company and is between you and a Customer, Vendor, or Consultant: (i) With whom you dealt on behalf of the Company; (ii) Whose dealings with the Company were coordinated or supervised by you; (iii) About whom you obtained Trade Secrets or Confidential Information in the ordinary course of business as a result of such your work performed on behalf of the Company; or (iv) Who purchases products or services from the Company, the sale or provision of which results or resulted in compensation, commissions, or earnings for you.

(*Id.*, at Exhibit A, ¶ E.)

33.

The Employment Agreements define the term "Business" as "the business of providing information technology related solutions services as well as recruiting information technology consultants for the purpose of placing such information technology consultants with companies or entities." (*Id.*, at Exhibit A, ¶ B.)

34.

Specifically, the Non-Solicitation Covenant states:

> 9.    <u>Non-Solicitation of Customers</u>: During the Restricted Period, you will not directly or indirectly solicit any Customer, Vendor, or Consultant of the Company for the purpose of selling or providing any products or services competitive with the Business. The restrictions set forth in this Section apply only to Customers, Vendors, or Consultants with whom you had Contact.

(*Id*. at § 9).

35.

Section 10 of the Employment Agreements includes a Non-Recruit of Employees restriction (the "Non-Recruit Covenant"). (*Id*. at § 10.)

36.

The Non-Recruit Covenant prohibits Faulkner and Markley from recruiting or inducing any Pyramid employees to terminate their employment relationship or to work for any person or entity engaged in the Business during the Restricted Period. (*Id*.)

37.

The Employment Agreements define the term "Employee" as "any person who (i) was employed by the Company at the time your employment with the Company ended, and (ii) remains employed by the Company during the Restricted Period." (*Id*., at Exhibit A, ¶ H.)

12

38.

Specifically, the Non-Recruit Covenant states:

> 10.   <u>Non-Recruit of Employees or Consultants</u>: During the
> Restricted Period, You will not, directly or indirectly, solicit,
> recruit or induce any Employee or Consultant to (a) terminate his
> or her relationship with the Company, or (b) work with or for any
> other person or entity engaged in the Business.

(*Id*. at § 10.)

39.

Section 14 of the Employment Agreements requires Faulkner and Markley to
provide a copy of the agreement to anyone for whom they work during the Restricted
Period. (*Id*. at § 14.)

40.

Specifically, the Employment Agreements state:

> 14.   <u>Post-Employment Disclosure</u>: During the Restricted
> Period, you shall provide a copy of this Agreement to persons
> and/or entities for whom you work or consult as an owner,
> partner, joint venturer, employee or independent contractor. If,
> during the Restricted Period, you work or consult for another
> person or entity as an owner, partner, joint venturer, employee or
> independent contractor, you shall provide the Company with
> such person or entity's name, the nature of such person or entity's
> business, your job title, and a general description of the services
> you will provide.

(*Id*.)

41.

The Employment Agreements require Faulkner and Markley to reimburse Pyramid for the attorneys' fees and costs Pyramid incurs prosecuting a lawsuit related to the Agreements if Pyramid is the prevailing party. (*Id*. at § 19.)

42.

Specifically, the Employment Agreements state:

> 19. Attorneys' Fees: In the event of litigation relating to this Agreement, the Company shall, if it is the prevailing party, be entitled to recover attorneys' fees and costs of litigation in addition to all other remedies available at law or in equity.

(*Id*.)

43.

Subject to Section 27 of the Markley Agreement, Pyramid is initiating arbitration for damages against Markley but is seeking injunctive relief against Markley from this Court. (Ex. 2 at § 27.)

**D.     Faulkner's Employment at Pyramid**

44.

On February 19, 2018, Pyramid hired Faulkner as a Perm Division Manager. As a Perm Division Manager, Faulkner actively participated in generating sales and

recruiting information technology consultants for the purpose of placing such information technology consultants with companies or entities.

45.

In November 2019, Pyramid promoted Faulkner to a Practice Director position. As a Practice Director, Faulkner both supervised team members and actively participated in the recruitment of information technology consultants for the purpose of placing such information technology consultants with companies or entities.

46.

During his employment with Pyramid, Faulkner earned more than sixty-five thousand dollars in annual compensation from Pyramid. During his employment with Pyramid, Faulkner generated several hundred thousand dollars in annual revenue for Pyramid.

47.

During Faulkner's employment with Pyramid, HHA was one of Pyramid's clients.

48.

Faulkner dealt with HHA on behalf of Pyramid.

49.

Faulkner coordinated or supervised HHA's dealings with Pyramid.

50.

Faulkner obtained confidential information about HHA in the ordinary course of business as a result of his work on behalf of Pyramid.

51.

Faulkner received commissions as a result of Pyramid's sale or provision of products and services to HHA.

**E.    Markley's Employment at Pyramid**

52.

On February 17, 2020, Pyramid hired Markley as an Account Executive. During his employment with Pyramid, Markley was in charge of generating sales and recruiting information technology consultants for the purpose of placing such information technology consultants with companies or entities.

53.

Markley lists his experience at Pyramid on his LinkedIn profile. (Exhibit 3.)

54.

During Markley's employment with Pyramid, he earned more than forty-five thousand dollars in annual compensation from Pyramid. During his employment

with Pyramid, Markley generated over thousands of dollars in annual revenue for Pyramid.

55.

Faulkner supervised Markley at Pyramid.

56.

During Markley's employment with Pyramid, HHA was one of Pyramid's clients.

57.

Markley dealt with HHA on behalf of Pyramid.

58.

Markley coordinated or supervised HHA's dealings with Pyramid.

59.

Markley obtained confidential information about HHA in the ordinary course of business as a result of his work on behalf of Pyramid.

60.

Markley received commissions as a result of Pyramid's sale or provision of products and services to HHA.

**F.    Faulkner and Markley End Employment with Pyramid and Begin Working for a Direct Competitor**

61.

On January 27, 2021, Markley's employment with Pyramid ended.

62.

Upon information and belief, Markley commenced employment with Homeland in February 2021 as an Account Executive. Upon information and belief, Markley is in charge of recruiting information technology consultants for the purpose of placing such information technology consultants with companies or entities.

63.

Markley's LinkedIn profile does not list his current employment with Homeland (Exhibit 3), but Markley created a second LinkedIn account under the name "John Palmer" which lists his current employment with Homeland (Exhibit 4.) "Palmer" is Markley's middle name.

64.

Upon information and belief, Markley recruited Faulkner to work for Homeland.

65.

On March 30, 2021, Faulkner resigned from Pyramid.

66.

Upon information and belief, Faulkner commenced employment with Homeland in April 2021 as a Director of Business Development. Upon information and belief, Faulkner supervises the recruitment of information technology consultants for the purpose of placing such information technology consultants with companies or entities.

## G. Markley directly or indirectly solicits HHA under Faulkner's supervision to provide services competitive with Pyramid

67.

Because Faulkner and Markley had "Contact" with HHA during their employment with Pyramid, for a period of twenty four (24) months after their employment with Pyramid ended, they are barred by the Non-Solicitation Covenant from soliciting HHA for purposes of selling HHA competitive products and services. (Ex. 1 and 2 at § 9.)

68.

On September 22, 2021, HHA notified Pyramid that it was accepting candidates for a Software Engineer and Senior Software Engineer position.

69.

On September 29, 2021, Pyramid submitted a candidate for the Senior Software Engineer position at HHA. (Exhibit 5.)

70.

HHA informed Pyramid that its candidate for the Senior Software Engineer position at HHA was not chosen. (Ex. 5.)

71.

Pyramid responded, "we definitely are continuing to search for the qualified candidates." (Ex. 5.)

72.

On October 5, 2021, Pyramid emailed HHA stating it had "several good calls set up with potential candidates tomorrow for both the Software Engineer and the Senior Software Engineer positions tomorrow. I wanted to see if where you are at in interviewing process for these positions at this time. I look forward to your response." (Ex. 5.)

73.

HHA informed Pyramid, "We might have filled the positions. Give me a day to check and respond." (Ex. 5.)

74.

That same day, on October 5, 2021, Erkan Beker ("Beker") emailed Markley at Homeland, thanking Markley for recruiting him to work at HHA. (Exhibit 6.) Markley forwarded Beker's email to Faulkner's old email address at Pyramid. (*Id*.)

75.

Pyramid lost the opportunity to generate a fee from the Software Engineer and the Senior Software Engineer positions at HHA because of Faulkner and Markley's breaches of the Employment Agreements.

76.

Upon information and belief, since his employment with Pyramid terminated, and with Homeland's knowledge and assistance, Faulkner directly and/or indirectly solicited Pyramid customers and candidates with whom he had contact while employed at Pyramid for the purpose of providing services competitive with Pyramid's Business using Pyramid's Confidential Information about customers and candidates (the "Retained Confidential Information").

77.

Upon information and belief, since his employment with Pyramid terminated, and with Homeland's knowledge and assistance, Markley directly and/or indirectly solicited Pyramid customers and candidates with whom he had contact while employed at Pyramid for the purpose of providing services competitive with Pyramid's Business using Pyramid's Confidential Information about customers and candidates (the "Retained Confidential Information").

## H.   Faulkner and Markley Perform Competitive Tasks in the Restricted Territory

78.

Upon information and belief, since his employment with Pyramid terminated, and with Homeland's knowledge and assistance, Faulkner has performed on behalf of Homeland, a direct competitor of Pyramid, in the Restricted Territory, the same or similar tasks that he performed on behalf of Pyramid during his employment at Pyramid.

79.

Upon information and belief, since his employment with Pyramid terminated, and with Homeland's knowledge and assistance, Markley has performed on behalf of Homeland, a direct competitor of Pyramid, in the Restricted Territory, the same or similar tasks that he performed on behalf of Pyramid during his employment at Pyramid.

## I.   Faulkner and Markley Use or Disclose Pyramid's Confidential Information for Purposes Other than Pyramid's Business

80.

Upon information and belief, since his employment with Pyramid terminated, and with Homeland's knowledge and assistance, Faulkner has used or disclosed Pyramid's Confidential Information for purposes other than Pyramid's Business.

81.

Upon information and belief, since his employment with Pyramid terminated, and with Homeland's knowledge and assistance, Markley has used or disclosed Pyramid's Confidential Information for purposes other than Pyramid's Business.

**J.     Markley Directly or Indirectly Solicits, Recruits, or Induces Faulkner to Leave His Employment at Pyramid and Begin Working for Homeland**

82.

Upon information and belief, since his employment with Pyramid terminated, and with Homeland's knowledge and assistance, Markley has directly or indirectly solicited, recruited, or induced employees of Pyramid to terminate their relationship with Pyramid or work with or for any other person or entity engaged in the Business.

## COUNT ONE

## BREACH OF CONTRACT AS TO DEFENDANT FAULKNER

83.

Pyramid repeats and incorporates by reference each of the allegations set forth in paragraphs 1 through 82 above as if fully set forth herein.

84.

The Faulkner Agreement between Pyramid and Faulkner constitutes a valid and binding contract.

85.

Pyramid has fully and effectively performed its obligations pursuant to the Faulkner Agreement.

86.

Faulkner breached the Faulkner Agreement during the Restricted Period.

87.

During the Restricted Period, Faulkner breached the Non-Disclosure Covenant by using and/or disclosing Pyramid's Confidential Information for purposes other than Pyramid's Business.

88.

During the Restricted Period, Faulkner breached the Non-Competition Covenant by performing on behalf of Homeland, a direct competitor of Pyramid, in the Restricted Territory, the same or similar tasks that he performed on behalf of Pyramid during his employment at Pyramid.

89.

During the Restricted Period, Faulkner breached the Non-Solicitation Covenant by directly and/or indirectly soliciting Customers with whom he had contact during his employment with Pyramid to provide services for Homeland that are competitive with Pyramid's Business.

90.

As a direct and proximate result of Faulkner's breaches of the Faulkner Agreement, Pyramid has suffered and continues to suffer damages.

91.

Pyramid therefore is entitled to recover damages from Faulkner in an amount to be determined at trial.

92.

Pursuant to Section 19 of the Faulkner Agreement, Pyramid is entitled to recover from Faulkner the attorneys' fees and costs it has incurred and will incur as a result of Faulkner's breaches of the Faulkner Agreement.

## COUNT TWO

### INJUNCTIVE RELIEF AS TO DEFENDANT FAULKNER

93.

Pyramid repeats and incorporates by reference each of the allegations set forth in paragraphs 1 through 92 above as if fully set forth herein.

94.

Faulkner's conduct in using, disclosing, and/or retaining Pyramid's Confidential Information during the Restricted Period in violation of the Faulkner

Agreement has caused and will cause Pyramid irreparable and immediate injury, loss, and damage for which Pyramid has no adequate remedy at law.

95.

Faulkner's conduct in performing during the Restricted Period on behalf of Homeland, a direct competitor of Pyramid, in the Restricted Territory, the same or similar tasks that he performed on behalf of Pyramid in violation of the Faulkner Agreement has caused and will cause Pyramid irreparable and immediate injury, loss, and damage for which Pyramid has no adequate remedy at law.

96.

Faulkner's direct and/or indirect solicitation of Pyramid's Customers during the Restricted Period for the purpose of providing services competitive with Pyramid's Business in violation of the Faulkner Agreement has caused and will cause Pyramid irreparable and immediate injury, loss, and damage for which Pyramid has no adequate remedy at law.

97.

Unless enjoined and restrained, Faulkner will continue to violate the Faulkner Agreement and cause Pyramid irreparable harm by: (1) using, disclosing, and/or retaining Pyramid's Confidential Information for purposes other than Pyramid's business without Pyramid's written permission; (2) performing on behalf of

Homeland in the Restricted Territory the same or similar tasks that he performed on behalf of Pyramid; and (3) directly and/or indirectly soliciting the Pyramid Customers with whom he had Contact.

98.

Therefore, Pyramid respectfully requests that the Court grant immediate injunctive relief by preliminarily restraining and enjoining Faulkner during the Restricted Period from: (1) using, disclosing, and/or retaining Pyramid's Confidential Information for purposes other than Pyramid's business without Pyramid's written permission; (2) performing on behalf of Homeland in the Restricted Territory the same or similar tasks that he performed on behalf of Pyramid; and (3) directly and/or indirectly soliciting the Pyramid Customers with whom he had Contact.

99.

Pyramid further requests that this Court enter a permanent injunction to restrain and enjoin such conduct by Faulkner.

## **COUNT THREE**

**INJUNCTIVE RELIEF AS TO DEFENDANT MARKLEY**

100.

Pyramid repeats and incorporates by reference each of the allegations set forth in paragraphs 1 through 99 above as if fully set forth herein.

101.

The Markley Agreement between Pyramid and Markley constitutes a valid and binding contract.

102.

Pyramid has fully and effectively performed its obligations pursuant to the Markley Agreement.

103.

Markley breached the Markley Agreement during the Restricted Period.

104.

During the Restricted Period, Markley breached the Non-Disclosure Covenant by using and/or disclosing Pyramid's Confidential Information for purposes other than Pyramid's Business.

105.

During the Restricted Period, Markley breached the Non-Competition Covenant by performing on behalf of Homeland, a direct competitor of Pyramid, in the Restricted Territory, the same or similar tasks that he performed on behalf of Pyramid during his employment at Pyramid.

106.

During the Restricted Period, Markley breached the Non-Solicitation Covenant by directly and/or indirectly soliciting Customers with whom he had contact during his employment with Pyramid to provide services for Homeland that are competitive with Pyramid's Business.

107.

During the Restricted Period, Markley breached the Non-Recruit Covenant by recruiting and/or assisting Homeland in recruiting Faulkner to work at Homeland, a direct competitor of Pyramid.

108.

Markley's conduct in using, disclosing, and/or retaining Pyramid's Confidential Information during the Restricted Period in violation of the Markley Agreement has caused and will cause Pyramid irreparable and immediate injury, loss, and damage for which Pyramid has no adequate remedy at law.

109.

Markley's conduct in performing during the Restricted Period on behalf of Homeland, a direct competitor of Pyramid, in the Restricted Territory, the same or similar tasks that he performed on behalf of Pyramid in violation of the Markley Agreement has caused and will cause Pyramid irreparable and immediate injury, loss, and damage for which Pyramid has no adequate remedy at law.

110.

Markley's direct and/or indirect solicitation of Pyramid's Customers during the Restricted Period for the purpose of providing services competitive with Pyramid's Business in violation of the Markley Agreement has caused and will cause Pyramid irreparable and immediate injury, loss, and damage for which Pyramid has no adequate remedy at law.

111.

Markley's conduct in recruiting and/or assisting Homeland in recruiting Faulkner in violation of the Markley Agreement has caused or will cause Pyramid irreparable and immediate injury, loss, and damage for which Pyramid has no adequate remedy at law.

112.

Unless enjoined and restrained, Markley will continue to violate the Markley Agreement and cause Pyramid irreparable harm by: (1) using, disclosing, or retaining Pyramid's Confidential Information; (2) performing on behalf of Homeland in the Restricted Territory the same or similar tasks that he performed on behalf of Pyramid; (3) directly and/or indirectly soliciting the Pyramid Customers with whom he had Contact; (4) inducing Pyramid's employees to terminate their employment relationship with Pyramid;  and (5) continuing to recruit and/or assist Homeland in recruiting Pyramid employees.

113.

Therefore, Pyramid respectfully requests that the Court grant immediate injunctive relief by preliminarily restraining and enjoining Markley during the Restricted Period from: (1) using, disclosing, or retaining Pyramid's Confidential Information; (2) performing on behalf of Homeland in the Restricted Territory the same or similar tasks that he performed on behalf of Pyramid; (3) directly and/or indirectly soliciting the Pyramid Customers with whom he had Contact; (4) inducing Pyramid's employees to terminate their employment relationship with Pyramid; and (5) recruiting and/or assisting Homeland in recruiting Pyramid employees to work for Homeland or any other direct competitor of Pyramid.

114.

Pyramid further requests that this Court enter a permanent injunction to restrain and enjoin such conduct by Markley.

## **COUNT FOUR**

### **TORTIOUS INTERFERENCE WITH ADVANTAGEOUS BUSINESS RELATIONSHIPS AS TO DEFENDANT HOMELAND**

115.

Pyramid repeats and incorporates by reference each of the allegations set forth in paragraphs 1 through 114 above as if fully set forth herein.

116.

Pyramid had and has advantageous business relationships with customers and candidates identified in the Retained Confidential Information.

117.

Upon information and belief, Homeland received a copy of the Employment Agreements pursuant to Section 14 of the Employment Agreements.

118.

Upon information and belief, during the Restricted Period, Homeland used or allowed Faulkner to directly or indirectly solicit Pyramid's Customers, including, but not limited to, HHA, for the purpose of providing services competitive with Pyramid's Business.

119.

Upon information and belief, during the Restricted Period, Homeland used or allowed Markley to directly or indirectly solicit Pyramid's Customers, including, but not limited to, HHA, for the purpose of providing services competitive with Pyramid's Business.

120.

Pyramid suffered financial damage as a result of Homeland's interference with Pyramid's advantageous business relationships.

121.

Pyramid is entitled to recover its damages from Homeland in an amount to be determined at trial.

## COUNT FIVE

## TORTIOUS INTERFERENCE WITH CONTRACT AS TO DEFENDANT HOMELAND

122.

Pyramid repeats and incorporates by reference each of the allegations set forth in paragraphs 1 through 121 above as if fully set forth herein.

123.

The Faulkner Agreement between Pyramid and Faulkner constitutes a valid and binding contract.

124.

Pyramid has fully and effectively performed its obligations pursuant to the Faulkner Agreement.

125.

Homeland acted improperly, without privilege, and purposely with the intent to injure Pyramid, by tortiously interfering with the contractual relationship between Faulkner and Pyramid and by working with, encouraging, and allowing Faulkner to engage in conduct that violates the Agreement.

126.

The Markley Agreement between Pyramid and Markley constitutes a valid and binding contract.

127.

Pyramid has fully and effectively performed its obligations pursuant to the Markley Agreement.

128.

Homeland acted improperly, without privilege, and purposely with the intent to injure Pyramid, by tortiously interfering with the contractual relationship between Markley and Pyramid and by working with, encouraging, and allowing Markley to engage in conduct that violates the Agreement.

129.

As a direct and proximate result of Homeland's conduct, Pyramid has suffered and continues to suffer damages.

130.

Pyramid therefore is entitled to recover damages from Homeland in an amount to be determined at trial.

## COUNT SIX

### PUNITIVE DAMAGES AS TO DEFENDANT HOMELAND

131.

Pyramid repeats and incorporates by reference each of the allegations set forth in paragraphs 1 through 130 above as if fully set forth herein.

132.

Homeland's conduct described above constitutes willful misconduct, malice, fraud, wantonness, oppression, and/or that entire want of care which raises a presumption of conscious indifference to the consequences of its conduct.

133.

Accordingly, Pyramid is entitled to recover punitive damages from Homeland in an amount to be proven at trial.

134.

Upon information and belief, Homeland's conduct was undertaken with the specific intent to cause harm to Pyramid and, therefore, the amount of such punitive damages should not be subject to the maximum specified in O.C.G.A. § 51-12-5.1(g).

WHEREFORE, Pyramid demands and prays for the following relief:

(a)    That the Court issue the preliminary and permanent injunctive relief against Faulkner and Markley prayed for by: (1) enjoining Markley during the Restricted Period from inducing Pyramid's employees to terminate their employment relationship with Pyramid and recruiting and/or assisting Homeland in recruiting Pyramid employees to work for Homeland or any other direct competitor of Pyramid; and (2) enjoining Faulkner and Markley during the Restricted Period from: (i) using, disclosing, or retaining Pyramid's Confidential Information; (ii) performing on behalf of Homeland in the Restricted Territory the same or similar tasks that they performed on behalf of Pyramid; and (iii) directly and/or indirectly soliciting the Pyramid Customers with whom they had Contact;

(b)    That the Court enter judgment in favor of Pyramid against Faulkner for damages in an amount to be determined at trial;

(c)     That the Court enter judgment in favor of Pyramid against Homeland for damages in an amount to be determined at trial;

(d)     That the Court enter judgment in favor of Pyramid against Homeland for punitive damages;

(e)     That all costs of this action be assessed against Faulkner and Homeland;

(f)     That the Court award Pyramid its attorneys' fees and costs incurred in pursuing this action against Faulkner and Markley;

(g)     A trial by jury as to any issue that is triable of right by jury; and

(h)     Such other and further relief as the Court deems just and equitable.

Respectfully submitted,

This 17th day of November, 2021.

**BAKER & HOSTETLER LLP**

/s/ R. Jason D'Cruz
_____
**R. Jason D'Cruz**
jdcruz@bakerlaw.com
Georgia Bar No. 004740
**Natalie C. Pulley**
npulley@bakerlaw.com
Georgia Bar No. 794117
1170 Peachtree Street NW, Suite 2400
Atlanta, Georgia 30309
Phone: 404-946-9824
Facsimile: 404-459-5734